UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON subscribing to Policy No. SUAWS20395-2405 and MARKEL INTERNATIONAL INSURANCE COMPANY LIMITED,<br><br>PLAINTIFFS,<br><br>vs.<br><br>MERITIZE FINANCIAL INC., COLLEGE LOAN CORPORATION, MEASUREONE, INC., SOCRATIC VENTURES EDUCATION PARTNERS, LP and SOCRATIC VENTURES EDUCATION PARTNERS, II, LP,<br><br>DEFENDANTS. | Case No.:_____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

## COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE COURT:

Plaintiffs, Certain Underwriters at Lloyd's, London subscribing to Policy No. SUAWS20395-2405 and Markel International Insurance Company Limited (collectively "Underwriters"), by and through their undersigned counsel, herein submit their Complaint for Declaratory Judgment against Defendants, Meritize Financial Inc., College Loan Corporation, MeasureOne Inc., Socratic Ventures Education Partners, LP, and Socratic Ventures Education Partners II, LP, and allege as follows:

1

Case 4:25-cv-00220-SDJ    Document 1    Filed 03/04/25    Page 2 of 17 PageID #:  2

## **PARTIES**

1. Plaintiffs, Certain Underwriters at Lloyd's, London subscribing to Policy No. SUAWS20395-2405 consist of sole member Syndicate CSL 1084[1] whose sole corporate member is a foreign company with its principal place of business in London, England and is organized under the laws of the United Kingdom.

2. Plaintiff, Markel International Insurance Company Limited, which also subscribes to Policy No. SUAWS20395-2405, is a foreign company with its principal place of business in London, England and is organized under the laws of the United Kingdom.[2]

3. Defendant Meritize Financial Inc. ("Meritize") is a Delaware corporation with its principal place of business located at 580 Main Street, Suite 220, Frisco, Collin County, Texas 75034.

4. Defendant College Loan Corporation ("CLC") is a Nevada corporation with its principal place of business located at 350 South Rampart Boulevard, Suite 200, Las Vegas, Clark County, Nevada 89145.

5. Defendant MeasureOne, Inc. ("MeasureOne") is a Delaware corporation with its principal place of business located at 535 Mission Street, 14th Floor, San Francisco, San Francisco County, California 94105.

6. Defendant Socratic Ventures Education Partners, LP is a Texas limited partnership. Its partners are citizens of California, Illinois, Massachusetts, and Texas.

---

[1] Syndicate CSL 1084 is otherwise referred to as Chaucer Corporate Capital (No.3) Limited and has 82.5% of the security for the Policy.

[2] Markel International Insurance Company Limited has 17.5% of the security for Policy No. SUAWS20395-2405.

7. Defendant Socratic Ventures Education Partners II, LP is a Texas limited partnership. Its partners are citizens of California, Illinois, Massachusetts, and Texas. Defendants Socratic Ventures Education Partners, LP and Socratic Ventures Education Partners II, LP are collectively referred to herein as "Socratic."

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a)(2) because there is complete diversity between Underwriters, each of whom is a citizen of a foreign state, and Defendants, each of whom is a citizen of States within the United States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. The controversy between Underwriters and Meritize involves the defense and potential indemnification for a lawsuit pending against Meritize, bearing Case No. 4:24-cv-00872-ALM, filed in the United States District Court for the Eastern District of Texas (the "Socratic Suit"), for liabilities arising out of a claim for alleged misappropriation and plagiarizing of algorithms, a model, and related data known as the "Merit Score." The Policy has a $1,000,000 aggregate limit, and the Socratic Suit seeks actual damages based on hundreds of millions of dollars of loans allegedly originated without compensation to MeasureOne for use of the Merit Score, as well as exemplary damages and attorneys' fees.

10. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this controversy occurred in Collin County, Texas, which is located in this judicial district and division.

11. Meritize tendered the Socratic Suit, which is filed in the United States District Court for the Eastern District of Texas, Sherman Division, to Underwriters for defense under the Policy, and (if warranted) for indemnification.

## THE POLICY

12.     Underwriters issued a claims-made Professional Services Liability Policy to Meritize with Policy No. SUAWS20395-2405, for the Policy Period of June 12, 2024 to June 12, 2025 (the "Policy").

13.     The Policy contains an aggregate limit of $1,000,000, subject to a $50,000 retention each Claim.

14.     The Policy contains a Retroactive Date of June 5, 2017 and a Coverage Date of June 5, 2020.

**Insuring Agreement**

15.     The Policy contains the following Insuring Agreement:

**I.     INSURING AGREEMENT**

The Company will pay on behalf of the **INSURED LOSS** in excess of the Retention stated in Item 4 of the Declarations which the **INSURED** shall become legally obligated to pay as a result of any **CLAIM** first made against the **INSURED** during the **POLICY PERIOD** for a **WRONGFUL ACT** that occurred on or after the Retroactive Date stated in item 6 of Declarations.

16.     The Policy defines "**WRONGFUL ACT**" as "any actual or alleged negligent act, negligent error or negligent omission committed by the **INSURED** solely in the performance of or failure to perform professional services for others in the **INSURED'S** Profession as stated in Item 1.A. of the Declarations."

17.     Item I.A of the Declarations identifies the Insured's Profession as "<u>STUDENT LOAN ORIGINATION</u>;" and "<u>STUDENT LOAN SERVICING</u>."

18.     "**LOSS**" is defined in the Policy as "money damages, settlements, and **DEFENSE COSTS**," and to specifically exclude the following:

> 1.     punitive or exemplary damages or the multiplied portion of a multiplied damages award

  2. criminal or civil fines or penalties imposed by law;
  3. taxes;
  4. matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

  19. "**DEFENSE COSTS**" is defined in relevant part in the Policy in part as "necessary legal fees and expenses incurred with the approval of the Company in connection with the investigation, adjustment, settlement, defense or appeal of a Claim made against and **INSURED** for a **WRONGFUL ACT**."

**<u>Relevant Exclusions</u>**

  20. The Policy contains an exclusion in Section IV.A for **LOSS** in connection with any **CLAIM**: "based upon or directly or indirectly arising out of or resulting from an **INSURED** gaining in fact any personal profit or advantage to which the **INSURED** is not legally entitled."

  21. The Policy contains an exclusion in Section IV.B for **LOSS** in connection with any **CLAIM**: "that results in a judgment or final adjudication that any **INSURED** has committed any criminal, dishonest, intentionally malicious, or fraudulent act, error or omission."

  22. The Policy contains an exclusion in Section IV.J for **LOSS** in connection with any **CLAIM**: "seeking relief or redress in any form other than monetary damages including but not limited to **CLAIM(S)** for injunctive relief in any form whatsoever and including disciplinary proceedings."

  23. The Policy contains an exclusion in Section IV.K for **LOSS** in connection with any **CLAIM**: "based upon or directly or indirectly arising out of or resulting from the breach of an express warranty or guarantee."

  24. The Policy contains an exclusion in Section IV.L for **LOSS** in connection with any **CLAIM**: "based upon or directly or indirectly arising out of or resulting from any actual or alleged

infringement of copyright, title, slogan, patent, trademark, trade dress, service mark or services name."

25. The Policy contains an exclusion in Section IV.M for **LOSS** in connection with any **CLAIM**: "based upon or directly or indirectly arising out of or resulting from any actual or alleged unfair competition, interference with contract or violation of anti-trust laws."

26. The Policy contains an exclusion in Section IV.N for **LOSS** in connection with any **CLAIM**: "to the extent that there is coverage under any other existing valid policy or policies, whether such other insurance is stated to be contributory, excess, contingent or otherwise and regardless of whether or not such **LOSS** is collectible or recoverable under such other insurance; provided, however, that this exclusion shall not apply to any **LOSS** in excess of the retention and limit of liability of such other policy or policies where such **CLAIM** is otherwise covered under the terms of this Policy."

27. The Policy contains an exclusion in Section IV.O for **LOSS** in connection with any **CLAIM**: "based upon or directly or indirectly arising out of or resulting from any actual or alleged:"

   1. **WRONGFUL ACT** or matter, fact, circumstance, situation, event or transaction that has been the subject of any claim made prior to the inception of this Policy or of any notice given during any prior policy;
   2. **WRONGFUL ACT** which, together with a **WRONGFUL ACT** that has been the subject of any claim or notice identified in O.1. above, would constitute **INTERRELATED WRONGFUL ACTS**; or
   3. Matter, fact, circumstance, situation, event or transaction known to an **INSURED** prior to the Coverage Date set forth in Item 7 of the Declarations if such matter, fact or circumstance would cause a reasonable person to believe that a **CLAIM** for a **WRONGFUL ACT** may be made;

28. The Policy contains an exclusion in Section IV.CC for **LOSS** in connection with any **CLAIM**: "brought against the Parent or affiliated entities of a corporation named in Item 1 of the Declarations, or brought by or on behalf of a Parent or affiliated entities of a corporation named

in Item 1 of the Declarations. The term "Parent" means, for purposes of this Exclusion, a corporation that owns more than 50% of the voting stock of the corporation, if any, named in Item 1 of the Declarations."

29. The Policy also contains, by endorsement, an LMA Cyber and Data Exclusion, which "excludes any loss, damage, liability, claim, cost, defence cost, expense, fine, penalty, mitigation cost, or any other amount arising out of: […] a **Cyber Act**, " which is defined as "an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any **Computer System**."

## THE SOCRATIC SUIT

30. On September 30, 2024, Socratic filed their Shareholder Derivative Complaint (the "Socratic Complaint"), derivatively on behalf of MeasureOne, against Meritize and CLC in Case No. 4:24-cv-00872-ALM, in the United States District Court for the Eastern District of Texas. (*Socratic Ventures Education Partners, LP v. Meritize Financial, Inc., et al.*, Case No. 4:24-cv-872 (E.D. Tex.), ECF 1).

31. The Socratic Complaint alleged Socratic are investors in MeasureOne who are bringing a suit derivatively for the benefit of MeasureOne to redress misconduct by Meritize and CLC. (Socratic Complaint Summary).

32. According to the Socratic Complaint, MeasureOne developed a portfolio of algorithms known as the "Merit Score" that could take a student's academic profile and predict that individual's likelihood of graduating from college and having an economically productive career. (Socratic Complaint ¶ 10).

33. The Socratic Complaint alleged that these algorithms were the "key aspect" of a credit decisioning model that allowed loan originators to more confidently determine a loan applicant's credit risk (*i.e.*, the student's ability to complete a program, obtain a job, and pay off the loan). (Socratic Complaint ¶¶ 10-11).

34. The Socratic Complaint alleged that MeasureOne created Meritize as a wholly-owned subsidiary in 2016 to take in third-party investments and to originate student loans using the Merit Score, which was owned by MeasureOne. (Socratic Complaint ¶ 14).

35. The Socratic Complaint alleged that, in 2017, Meritize ceased being a subsidiary of MeasureOne, at which point MeasureOne and Meritize executed a Master Services Agreement (the "MSA") and various statement of works, including Statement of Work #2 (the "SOW") that governed the use of the Merit Score. (Socratic Complaint ¶¶ 17-18).

36. The Socratic Complaint alleged that, under the MSA and the SOW, MeasureOne retained ownership of the Merit Score. However, the SOW allegedly allowed Meritize to access and use the Merit Score to assist in loan origination in exchange for payment. (Socratic Complaint ¶ 19).

37. The Socratic Complaint alleged that Meritize's use of the Merit Score was tightly regulated by the MSA and SOW insofar as the Merit Score could only be used for internal purposes, and Meritize was prohibited from copying the Merit Score, creating derivative works, reverse engineering the Merit Score, decompiling or disassembling the Merit Score, or using the Merit Score to build a similar or competitive product. (Socratic Complaint ¶ 21).

38. The Socratic Complaint alleged that the MSA and the SOW also contained broad confidentiality and non-disclosure obligations and renewed each year until a party provided written notice of termination. (Socratic Complaint ¶ 22-23)

39. The Socratic Complaint alleged that, from 2017 onwards, Meritize took in investments and used the Merit Score to originate loans, which included just under one hundred million dollars in loans between 2019 and 2020, and attributes Meritize's success in originating loans to the Merit Score. (Socratic Complaint ¶ 24).

40. According to the Socratic Complaint, Meritize paid MeasureOne for the use of the Merit Score in 2019 and 2020 and through October of 2021, and continued using the Merit Score to originate tens of millions of dollars of loans during that time period. (Socratic Complaint ¶¶ 25-31).

41. The Socratic Complaint alleged that Meritize paid for the use of the Merit Score through October 2021 and "purportedly" stopped using it at that time. (Socratic Complaint ¶ 31).

42. The Socratic Complaint alleged, however, that MeasureOne has never terminated the MSA or the SOW or received a notice of cancellation of the MSA or the SOW from Meritize, which leaves those agreements in effect. (Socratic Complaint ¶ 32).

43. The Socratic Complaint alleged that Meritize is continuing to grow substantially, and upon information and belief, it is taking in billions of dollars of loan applications per year and originating hundreds of millions of dollars of loans annually. (Socratic Complaint ¶ 34).

44. The Socratic Complaint alleged that Meritize has only been able to originate loans at such a rate because it has misappropriated the Merit Score to create an alternative product to predict risk and originate loans without paying compensation to MeasureOne. (Socratic Complaint ¶ 35).

45. Counts I and II of the Socratic Complaint asserted claims of trade secret misappropriation and violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, respectively, against Meritize on the basis that Meritize has either continued to use the Merit Score

or developed an alternative to the Merit Score with "ill will hatred or reckless disregard" and include allegations that Meritize has been unjustly enriched by its use of the Merit Score. (Socratic Complaint ¶¶ 44-55).

46. Count III of the Socratic Complaint asserted a claim of breach of contract against Meritize on the basis that Meritize has allegedly breached the MSA and the SOW by: (1) creating an alternative to the Merit Score; (2) using the Merit Score against already-originated loans; and (3) providing MeasureOne's confidential and propriety information, including the Merit Score, to third-parties. (Socratic Complaint ¶¶ 56-62).

47. The Socratic Complaint seeks an award of actual damages, damages in relation to Meritize's alleged unjust enrichment, exemplary damages, attorney's fees and costs, and pre-judgment and post-judgment interest. (Socratic Complaint ¶¶ 49-52,61-62, Prayer).

48. On February 3, 2025, Socratic filed and served on Meritize a Verified Shareholder Amended Derivative Complaint (*Socratic Ventures Education Partners, LP v. Meritize Financial, Inc., et al.*, Case No. 4:24-cv-872 (E.D. Tex.), ECF 38) (the "Amended Socratic Complaint").

49. The liability facts alleged in the Amended Socratic Complaint are substantially identical to those alleged in the Socratic Complaint, save for certain changes, and present the same coverage issues made the basis of this action. (*Socratic Ventures Education Partners, LP v. Meritize Financial, Inc., et al.*, Case No. 4:24-cv-872 (E.D. Tex.), ECF 38).

50. The types and amounts of damages sought in the Amended Socratic Complaint are identical to those alleged in the Socratic Complaint, and present the same coverage issues made the basis of this action. (*Socratic Ventures Education Partners, LP v. Meritize Financial, Inc., et al.*, Case No. 4:24-cv-872 (E.D. Tex.), ECF 38).

## **TENDER OF SOCRATIC SUIT, AND RESULTING CASE AND CONTROVERSY**

51. In this action, Underwriters seek a declaration pursuant to 28 USC §§ 2201-2202 and Fed R. Civ. P. 57 regarding the parties' rights and obligations under the Policy for liabilities arising out of the alleged misappropriation and plagiarizing of the Merit Score, as alleged in the Socratic Suit.

52. After being served with the Socratic Complaint, Meritize tendered its defense and indemnification in the Socratic Suit to Underwriters under the Policy.

53. On January 16, 2025, Underwriters agreed to reimburse the reasonable portion of Defense Costs that would be necessarily incurred to defend Meritize against the Socratic Complaint under the Policy, subject to a full and complete reservation of Underwriters' rights, remedies and defenses under the Policy (including reservations of rights based on the policy provisions identified above, including to initiate a declaratory judgment action).

54. On February 25, 2025, Underwriters also agreed to reimburse the reasonable portion of Defense Costs that would be necessarily incurred to defend Meritize against the Amended Socratic Complaint under the Policy, subject to a full and complete reservation of Underwriters' rights, remedies and defenses under the Policy (including reservations of rights based on the policy provisions identified above, including to initiate a declaratory judgment action).

55. Underwriters dispute whether the Policy affords coverage for Meritize with respect to the Socratic Suit, and dispute whether Underwriters have any obligation to defend or indemnify Meritize with respect to the Socratic Suit.

56. Therefore, an actual controversy exists between Underwriters and Meritize regarding whether the Policy obligates Underwriters to: (a) defend Meritize against, or pay

Meritize's **DEFENSE COSTS**, incurred in the Socratic Suit; and/or (b) to indemnify Meritize against any adverse judgment that may be rendered against Meritize in the Socratic Suit.

**CLAIMS FOR DECLARATORY JUDGMENT**

**Declarations Pertaining to Defense of Meritize**

  53.  Incorporating the foregoing allegations by reference, Underwriters request judgment against Meritize declaring that the Socratic Complaint and the Amended Socratic Complaint:

    a.  Are not a **CLAIM** for a **WRONGFUL ACT** as it fails to allege a negligent act, negligent error or negligent omission by Meritize solely in the performance of or failure to perform professional services for others in its profession of "STUDENT LOAN ORGINATION" or "STUDENT LOAN SERVICING" and therefore fails to trigger coverage under the Insuring Agreement of the Policy;

    b.  Are a **CLAIM** based upon or directly or indirectly arising out of or resulting from Meritize gaining in fact a personal profit or advantage to which the Meritize is not legally entitled, triggering the exclusion in Section IV.A of the Policy;

    c.  Are a **CLAIM** based upon or directly or indirectly arising out of or resulting from breach of an express warranty or guaranty in the MSA and/or the SOW, triggering the exclusion in Section IV.K of the Policy;

    d.  Are a **CLAIM** based upon or directly or indirectly arising out of or resulting from actual or alleged infringement of copyright, title, slogan, patent, trademark, trade dress, service mark or service name, namely the Merit Score, triggering the exclusion in Section IV.L of the Policy;

    e.  Are a **CLAIM** based upon or directly or indirectly arising out of or resulting from actual or alleged unfair competition, interference with contract or violation of anti-trust laws, triggering the exclusion in Section IV.M of the Policy;

    f.  Are a **CLAIM** based upon or directly or indirectly arising out of or resulting from an actual or alleged matter, fact, circumstance, situation, event or transaction that has been the subject of a claim made prior to the inception of this Policy or of any notice given during any prior policy, triggering the exclusion in Section IV.O of the Policy;

      g.      Are a **CLAIM** brought by or on behalf of a Parent or an affiliated entity of Meritize, triggering the exclusion in Section IV.CC of the Policy; and/or

      h.      Allege loss, damage, liability, etc. arising out of a **Cyber Act,** triggering the LMS CYBER and DATA EXCLUSION of the Policy.

57.    Based upon one or more the foregoing, Underwriters request a judgment declaring that the Policy:

      a.      Imposes no duty or obligation on Underwriters to pay or reimburse Meritize for **DEFENSE COSTS** incurred by Meritize in defending against the Socratic Suit, and

      b.      Permits Underwriters to cease paying or reimbursing Meritize for any **DEFENSE COSTS** it has incurred, or may incur, in defending against the Socratic Suit.

58.    In the alternative, if it is determined that the Socratic Complaint and/or the Amended Socratic Complaint do contain allegations against Meritize that fall within the Policy's Insuring Agreement and outside of its Exclusions, then Underwriters seek a judgment declaring that their obligation to reimburse **DEFENSE COSTS** are limited to claims in the Socratic Complaint and/or the Amended Socratic Complaint that fall within the scope of the Policy's coverage.

59.    In the alternative, if it is determined that the Socratic Complaint and/or the Amended Socratic Complaint do contain allegations against Meritize that fall within the Policy's Insuring Agreement and outside of its Exclusions, then Underwriters seek a judgment declaring that their obligation to reimburse **DEFENSE COSTS** incurred by Meritize in the Socratic Suit are limited to amounts representing attorneys' fees that are deemed to be reasonable, and that are deemed to result from rendition of legal services that were necessary for the defense of Meritize against the Socratic Suit.

**Declarations Pertaining to Indemnification of Meritize**

60. In the alternative, in the event that it is determined that the Socratic Complaint and/or the Amended Socratic Complaint do contain allegations against Meritize that fall within the Policy's Insuring Agreement and outside of its Exclusions, and in the event that an adverse judgment is ultimately rendered against Meritize in the Socratic Suit, then Underwriters seek a judgment declaring that their obligation to indemnify Meritize against any such award is limited to actual damages that fall within the Policy's Insuring Agreement and outside of its Exclusions.

61. In the event an adverse judgment is ultimately rendered against Meritize in the Socratic Suit, then Underwriters request a judgment from this Court declaring whether such damages awarded to Socratic/MeasureOne constitute:

    a. **LOSS,** or damages, that does not result from a **CLAIM** for a **WRONGFUL ACT**, or a negligent act, negligent error or negligent omission by Meritize solely in the performance of or failure to perform professional services for others in its profession of "STUDENT LOAN ORGINATION" or "STUDENT LOAN SERVICING," and therefore does not trigger coverage under the Insuring Agreement of the Policy;

    b. **LOSS**, or damages, in connection with a **CLAIM** based upon or directly or indirectly arising out of or resulting from Meritize gaining in fact a personal profit or advantage to which Meritize is not legally entitled, triggering the exclusion in Section IV.A of the Policy;

    c. **LOSS**, or damages, in connection with a **CLAIM** based upon or directly or indirectly arising out of or resulting from breach of an express warranty or guaranty in the MSA and/or the SOW, triggering the exclusion in Section IV.K of the Policy;

    d. **LOSS**, or damages, in connection with a **CLAIM** based upon or directly or indirectly arising out of or resulting from actual or alleged infringement of copyright, title, slogan, patent, trademark, trade dress, service mark or service name, namely the Merit Score, triggering the exclusion in Section IV.L of the Policy;

    e. **LOSS**, or damages, in connection with a **CLAIM** based upon or directly or indirectly arising out of or resulting from actual or alleged unfair

     competition, interference with contract or violation of anti-trust laws, triggering the exclusion in Section IV.M of the Policy;

  f. **LOSS**, or damages, in connection with a **CLAIM** based upon or directly or indirectly arising out of or resulting from an actual or alleged matter, fact, circumstance, situation, event or transaction that has been the subject of a claim made prior to the inception of this Policy or of a notice given during a prior policy, triggering the exclusion in Section IV.O of the Policy;

  g. **LOSS**, or damages, in connection with a **CLAIM** brought by or on behalf of a Parent or an affiliated entity of Meritize, triggering the exclusion in Section IV.CC of the Policy;

  h. Loss or damage arising out of a **Cyber Act,** triggering the LMS CYBER and DATA EXCLUSION of the Policy;

  i. punitive or exemplary damages, which are excluded from the definition of **LOSS** in Section III.C of the Policy**;**

  j. restitution or disgorgement of amounts by which Meritize was unjustly enriched and therefore do not constitute money damages and/or constitute matters that are uninsurable under the law, falling outside of the definition of **LOSS** in Section III.C of the Policy;

  k. **LOSS**, or damages, in connection with a **CLAIM** that resulted in a judgment or final adjudication that Meritize committed a dishonest, intentionally malicious, or fraudulent act, error, or omission, triggering the exclusion in Section IV.B of the Policy;

  l. **LOSS**, or damages, in connection with a **CLAIM** for relief other than money damages, triggering the exclusion in Section IV.J of the Policy; and/or

  m. **LOSS**, or damages, in connection with a **CLAIM** for which there is coverage under another existing policy or policies, triggering the exclusion in Section IV.N of the Policy.

  62. In the event that an adverse judgment is ultimately rendered against Meritize in the Socratic Suit, then Underwriters request judgment from this Court declaring whether the Policy imposes a duty or obligation upon Underwriters to indemnify Meritize against such judgment in the Socratic Suit.

## **REQUEST FOR JUDGMENT**

WHEREFORE, Plaintiffs, Certain Underwriters at Lloyd's, London subscribing to Policy No. SUAWS20395-2405 and Markel International Insurance Company Limited, respectfully request that this Court enter judgment in their favor as follows:

a. Declaring that the Policy does not obligate Underwriters to provide or pay for a defense of Meritize against the Socratic Suit;

b. Declaring that the Policy does not obligate Underwriters to pay, or indemnify against, any damages that may be assessed against Meritize and awarded to Socratic/MeasureOne in the Socratic Suit; or

c. In the alternative, declaring the extent to which the Policy obligates Underwriters to pay, or to indemnify against, any damages that may be assessed against Meritize and awarded to Socratic/MeasureOne in the Socratic Suit; and

d. Awarding Underwriters such other and further relief to which they may be justly entitled.

Respectfully submitted,

By: */s/ Paul K. Nesbitt*
PAUL K. NESBITT
pnesbitt@ksklawyers.com
Texas Bar No. 14920500

**Lead Attorney for Plaintiffs Certain Underwriters at Lloyd's London subscribing to Policy No. SUAWS20395-2405 and Markel International Insurance Company Limited**

OF COUNSEL:

S̲UTTER̲ & K̲ENDRICK̲, P.C.
5858 Westheimer, Suite 688
Houston, Texas 77057
Tel:  713-595-6000
Fax:  713-595-6001

-- and

Howard J. Fishman (*pro hac vice* pending)
hfishman@karballaw.com
K̲ARBAL̲, C̲OHEN̲, E̲CONOMOU̲, S̲ILK̲ & D̲UNNE̲, LLC
200 South Wacker Drive, Suite 2550
Chicago, Illinois 60606
Tel:  (312) 431-3700